IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; SAN FRANCISCO BAY GUARDIAN; UNIVERSITY OF CALIFORNIA SANTA CRUZ STUDENTS AGAINST WAR; AND BERKELEY STOP THE WAR COALITION,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF DEFENSE, and its components DEPARTMENT OF THE ARMY; DEPARTMENT OF THE NAVY AND DEPARTMENT OF THE AIR FORCE, and DOES 1–10, inclusive,<br><br>Defendants. | No. C 06-01698 WHA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this FOIA action, the agencies' own regulations required (as some of the agencies have acknowledged) "expedited processing" of the FOIA requests at issue. Therefore, plaintiffs' summary judgment motion is **GRANTED**. This order requires only expedited processing, reserving for a future day any issue of exemptions; this order does not compel sensitive or classified information to be produced.

## STATEMENT

When a court assesses an agency's decision to deny expedited FOIA processing, it must constrain its review to "the record before the agency at the time of the determination." 5 U.S.C.

552(a)(6)(E)(iii). All facts repeated herein are from that record, with the exception of procedural history.

Plaintiffs American Civil Liberties Union of Northern California, San Francisco Bay Guardian, University of California Santa Cruz Students Against War and Berkeley Stop the War Coalition filed numerous news articles with the Department of Defense and some of its component agencies. Plaintiffs provided these articles to support their requests for expedited processing. The articles thus became part of the administrative record. They are cited below. The Court does not reference or rely upon any articles not in the record. The Court uses the articles for a limited purpose. They are evidence only of the degree and type of media interest. The articles are not proof of the matters asserted in them.

On December 14, 2005, MSNBC.com published an article revealing that the Department of Defense had been gathering information on political protests within the United States. The article stated that about forty anti-war gatherings were documented over six months, ranging from street demonstrations in Los Angeles to a planning session by Quaker peace activists. MSNBC.com said the information was gathered as part of the TALON (Threat and Local Observation Notice) system by the Counterintelligence Field Activity (CIFA) subdivision of the Department of Defense (DoD or DOD). The program was designed to gather information on terrorism and threats to military bases. Lisa Myers *et al.*, *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005; *see also* Kathryn Casa, *Pentagon spy database includes Vermont protests*, Vermont Guardian, Dec. 20, 2005.[1]

Over the next month-and-a-half, the news media and government reacted to the MSNBC.com article. On the same day as the report, the Pentagon reacted. The military told reporters that it viewed "with the greatest concern any potential violation" of its domestic-surveillance policies. The Associated Press stated that the Pentagon had ordered a full review of the TALON system to ensure that it did not violate the law or military policies, including

---

[1] All news reports cited in this order appear in the Schlosberg Declaration, Exhibit 2, and are authenticated in paragraph four of that declaration.

2

1  rules on gathering information about people within the United States.  Associated Press,
2  *Pentagon Reviews Use of Suspicious People, Activity Database*, FOXNews.com, Dec. 15, 2005.

3  On December 15, the *New York Times* carried an article stating that the Pentagon had
4  conceded that it failed to follow its own guidelines.  Those guidelines reportedly required that it
5  purge information on American citizens and groups within three months if they did not pose a
6  security threat.  David S. Cloud, *Pentagon Is Said to Mishandle a Counterterrorism Database*,
7  New York Times, Dec. 16, 2005.

8  Also on December 15, Snehal Shingavi of plaintiff Berkeley Stop the War Coalition was
9  quoted as stating that her group had been watched during a protest against on-campus military
10 recruiting.  *Anti-War Protesters Under Pentagon Surveillance Speak Out*, Democracy Now!,
11 Dec. 15, 2005.  The next day, the *Santa Cruz Sentinel* reported that one incident in the database
12 was a protest at the University of California, Santa Cruz against military recruiting on campus.
13 According to the *Sentinel*, the sit-in protest had shut down a job fair, resulted in one injury and
14 forced military recruiters to leave.  Jondi Gumz, *Congressman denounces Pentagon spying at*
15 *UCSC*, Santa Cruz Sentinel, Dec. 17, 2005.  There were several more news articles about the
16 military's reports on the protests at those two campuses.  *See, e.g.*, Aaron McQuade, Sirius
17 OutQ News, *U.S. military appears to be spying on "don't ask, don't tell" protests*,
18 Advocate.com, Dec. 15–17, 2005; Christopher Curtis, *U.S. surveillance moves rile LGBT*
19 *groups*, PlanetOut, gay.com, Dec. 20, 2005.

20 Several publications focusing on news in the gay and lesbian community reported that
21 the database contained information on gay-advocacy groups at universities, particularly their
22 protests of the military's policy of expelling openly gay members from its ranks.  The news
23 reports claimed that the Pentagon had classified some of these protest groups as "potentially
24 violent" or as "credible threat[s]" of terrorism.  Andrew Keegan, *Pentagon spied on gay student*
25 *groups, report says*, Southern Voice Online, sovo.com, Dec. 20, 2005; Christopher Curtis, *U.S.*
26 *surveillance moves rile LGBT groups*, PlanetOut, gay.com, Dec. 20, 2005.

27 According to the media, several elected officials asked for inquiries into the TALON
28 system, including Senators Dianne Feinstein, D-Cal., Patrick Leahy, D-Vt., and Bill Nelson, R-

3

Fla., and Representatives Sam Farr, D-Cal., Zoe Lofgren, D-Cal., and Robert Wexler, D-Fla. Lisa Myers and the NBC Investigative Unit, *Senator demands investigation of spy database*, MSNBC.com, Dec. 15, 2005; Gumz, *Congressman denounces Pentagon spying*, Santa Cruz Sentinel; Betty Bartindale, *Lofgren Seeks Probe of Pentagon Activity*, San Jose Mercury News *at* blackenterprise.com, Jan. 1, 2006; Associated Press, *Senator Questions Pentagon on Domestic Surveillance Program*, FOXNews.com, Jan. 12, 2006.

*The Washington Post* later reported that the Pentagon's own investigation found that about one percent of TALON reports either had been kept too long without verification of the underlying events as true threats, or should not have been put into the database at all. The newspaper also stated that Counterintelligence Field Activity had made the reports available to military base commanders and other intelligence agencies. A Pentagon spokesman told a *Post* reporter that he did not know how many other intelligence agencies had picked up these questionable reports. The questionable reports were, however, reportedly added to a database operated by the Northern Command, a Defense Department unit responsible for homeland security. That database was open to local and state law-enforcement agencies. Walter Pincus, *Unverified Reports of Terror Threats Linger*, washingtonpost.com, Jan. 31, 2006. All told, plaintiffs provided at least fifty-three separate articles on the TALON program to the Department of Defense.[2]

News organizations reported that one reason the program attracted so much scrutiny was that, for critics at least, it reminded them of the Vietnam era, when the military monitored and infiltrated anti-war and civil-rights protests, investigating at least 100,000 citizens. Lisa Myers *et al.*, *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005.

\*   \*   \*

On January 31, 2006, plaintiffs American Civil Liberties Union of Northern California and the San Francisco Bay Guardian filed identical FOIA requests with several Defense Department components "on behalf of" plaintiffs University of California Santa Cruz Students

---

[2] Plaintiffs submitted eight-four separate articles to the Department of Defense, but many of these were reprints of the same article in different publications; a few were editorials.

4

Against War and Berkeley Stop the War Coalition, and those two groups' members. The requests were made to all defendants: the Department of Defense and the Departments of the Army, Navy and Air Force (Schlosberg Decl. ¶ 2, Exh. 1 (Letter from Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California and Tim Redmond, Executive Editor, the Bay Guardian to the Department of Defense (Jan. 31, 2006)).[3]

The requestors asked for documents from the following Defense Department components: the Directorate for Freedom of Information and Security Review, the Departments of the Army, Navy and Air Force, the Inspector General of the Department of Defense and the Defense Intelligence Agency (*ibid.*).

The records requested included the following:

1. Documents pertaining to Students Against War and the Stop the War Coalition, including the inclusion of them, their members or their activities in TALON databases, the distribution of any such information to other organizations and whether it was purged from Defense Department files;

2. Records on protests at university campuses in Santa Cruz and Berkeley;

3. Documents about the "procedures governing TALON reports or any other reports on individuals and organizations within the United States;"

4. All regulations for the Counterintelligence Field Activity regarding First Amendment protections, gathering information on domestic activities and the inclusion and purging of information from CIFA databases;

5. Documents analyzing the TALON system's gathering of information on political protests and the failure to purge information from the system; and

6. All information on the formation of the TALON program and associated regulations and policy statements

(*ibid.*).

---

[3] The two university groups and their members were described as clients of the ACLU of Northern California. Other requestors were the communications department of the ACLU of Northern California, the ACLU Foundation of Northern California, the requestors' employees and boards of directors, and several individuals.

5

1   The requestors asked for expedited processing on the grounds that they had a compelling
2   need for the information because the Bay Guardian was a news organization that needed the
3   information urgently to inform the public about alleged federal government activity. They also
4   alleged that the military's domestic gathering of intelligence on political activities was a
5   breaking news story (*ibid.*).[4]

6   On February 13, 2006, the Office of Freedom of Information of the Department of
7   Defense rejected the request for expedited processing that had been directed to the Directorate
8   for Freedom of Information and Security Review. The Office stated that "the information that
9   you have requested is not the subject of a breaking news story because, as you have
10  demonstrated, the subject of your request has already been addressed in several news articles
11  from around the country" (Schlosberg Decl., Exh. 3 (Letter from Will Kammer, Chief, Office of
12  Freedom of Information to Mark Schlosberg, Police Practices Policy Director, ACLU of
13  Northern California (Feb. 13, 2006)).[5]

14  The Department of the Air Force also denied the request for expedited processing,
15  stating that the requestors "did not demonstrate the information is urgently needed in order to
16  inform the public about actual or allege [sic] Federal Government activity. You did not provide
17  enough information to make a determination of compelling need for the information you
18  requested" (Schlosberg Decl., ¶ 11, Exh. 8 (Letter from John M. Espinal, Chief, Documentation
19  Information & Services Branch, to Tim Redmond, Executive Editor, the Bay Guardian (Mar.
20  10, 2006)).

21  The Department of the Navy also rejected expedited review. It did not specify the
22  reason beyond reciting the legal standards for granting expedited processing and then stating "I

---

[4] Requestors also justified their request by claiming the information was needed to prevent the imminent violation of substantive due process rights (Schlosberg Decl. ¶ 2, Exh. 1 (Letter from Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California and Tim Redmond, Executive Editor, the Bay Guardian to the Department of Defense (Jan. 31, 2006)). Because this order grants plaintiffs' motion on other grounds, it does not address that justification.

[5] The Directorate for Freedom of Information and Security Review, to which one request was sent, is now called the Office of Freedom of Information (Schlosberg Decl., ¶ 6, Exh. 3 (Letter from Will Kammer, Chief, Office of Freedom of Information to Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California (Feb. 13, 2006)).

6

United States District Court
For the Northern District of California

do not believe that your request meets these threshold levels and therefore deny your request . . .." (Supplemental Schlosberg Decl. ¶ 3, Exh. B (Letter from Jason L. Jones, Assistant Staff Judge Advocate, to requestors (Apr. 18, 2006)).

The Defense Intelligence Agency and the Department of the Army *granted* the requests for expedited processing (Schlosberg Decl. ¶ 7, Exh. 4 (Letter from Margaret A. Bestrain, Chief, Public Access Branch, Defense Intelligence Agency, to Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California (Feb. 16, 2006); Schlosberg Decl., ¶ 9, Exh. 6 (Letter from Susan J. Butterfield, Director, Freedom of Information/Privacy Office Investigative Records Repository, to Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California (Mar. 27, 2005)).

Plaintiffs apparently never received a response to their request for information from the Defense Department's Inspector General. That request was forwarded for processing to the Office of Freedom of Information (Schlosberg Decl. ¶ 8, Exh. 5 (Letter from Darryl R Aaron, Chief, Freedom of Information Act and Privacy Act Office, to Mark Schlosberg, Police Practices Policy Director, ACLU of Northern California (Feb. 7, 2006)).

Plaintiff filed this action March 7, alleging that the denials were violations of 5 U.S.C. 552(a)(6)(E), 32 C.F.R. 286.4(d)(3) and DoD Regulation 5400.7-R §§ C1.5.4.3 and C1.5.4.3.4. They ask the Court to order defendants to expedite the processing of their requests, to disclose the requested records and to make copies of them available to plaintiffs. They also seek a declaratory judgment and an award of costs and fees.

**ANALYSIS**

Summary judgment is proper where the pleadings, declarations, attached documents and other evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c), (e); 28 U.S.C. 1746 (allowing substitution of declaration for affidavits). A genuine dispute as to a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this action, there are no factual

7

disputes. Both sides rely upon the administrative record. There are no disputes about the contents of the administrative record.

### 1. FREEDOM OF INFORMATION ACT.

The Electronic Freedom of Information Act Amendments of 1996 require expedited processing of FOIA inquiries whenever the requestor demonstrates a compelling need. "[W]ith respect to a request made by a person primarily engaged in disseminating information," compelling need means an "urgency to inform the public concerning actual or alleged Federal Government activity." If the agency denies a request for expedited processing, it is reviewable *de novo* by a district court and the burden is on the agency to justify its decision. The review "shall be based on the record before the agency at the time of the determination." The district court loses jurisdiction if the agency responds fully to the request. 5 U.S.C. 552(a)(4)(B), 552(a)(6)(E)(i)(I), 552(a)(6)(E)(iii)–(iv), 552(a)(6)(E)(v)(II).

The expedited-processing statute originated as a House bill, which was approved by the Senate without change. The House report stated that:

> [A] "compelling need" would exist only when a delay could "reasonably be foreseen to cause a significant adverse consequence to a recognized interest. . . . ¶ The specified categories for compelling need are intended to be narrowly applied. . . . ¶ The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest. The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard. . . . ¶ Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.

H.R. Rep. No. 104-795, at 26 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 3448, 3469; *see also Al-Fayed v. CIA*, 254 F.3d 300, 310–11 (D.C. Cir. 2001) (applying legislative history).

### 2. DEPARTMENT OF DEFENSE FOIA REGULATIONS.

Requests to the Department of Defense for expedited processing must be granted whenever the requestor "demonstrates a compelling need for the information." "Compelling need" is demonstrated if the requestor is "a person whose primary activity involves publishing or otherwise disseminating information to the public" who urgently needs the information "in

8

1  order to inform the public concerning actual or alleged Federal Government activity." The
2  information is only considered "urgently needed" if it "has a particular value that will be lost if
3  not disseminated quickly. Ordinarily this means a breaking news story of general public
4  interest." 32 C.F.R. 286.4(d)(3), (d)(3)(ii), (d)(3)(ii)(A); *see also* DoD Regulation 5400.7-R §§
5  C1.5.4.3, C1.5.4.3.2, C1.5.4.3.2.1, C1.5.4.3.3 (repeating same requirements).

### 3. MERITS OF PLAINTIFFS' REQUESTS.

This action has nothing to do with whether the military must turn over the requested information. The information might be protected from disclosure under one of the FOIA's exemptions. The question of what must be turned over is simply not before the Court. In this action, plaintiffs seek only expedited processing. They seek a process, not a result. No secrets will be revealed as a result of this order.

The only disputed issues are whether plaintiffs urgently needed the information "in order to inform the public," 32 C.F.R. 286.4(d)(3)(ii) and whether the information had "a particular value that [would have been] lost if not disseminated quickly," 32 C.F.R. 286.4(d)(3)(ii)(A). The second issue is really a subpart of the first issue because it defines what types of materials can be "urgently needed," *ibid.*[6]

Several Defense Department components granted expedited review. The only live claims are therefore against the Department of Defense and the departments of the Air Force and Navy. The requests still being litigated include those handled by the Office of Freedom of Information, on behalf of both itself and the Inspector General.

Applying the *de novo* standard of review, this order holds that the requests all should have been granted expedited review. Defendants erred in not doing so. Plaintiffs showed the agencies that the requestors had an "urgency to inform the public," 5 U.S.C. 552(a)(6)(E)(i)(I), (v)(II). At the time of the request, operation of the TALON system, particularly its collection of

---

[6] Defendants concede that the requested information concerns "actual or alleged Federal Government activity," and that the Bay Guardian must be treated as "a person whose primary activity involves publishing or otherwise disseminating information to the public," 5 U.S.C. 552(a)(6)(E)(v)(II); 32 C.F.R. 286.4(d)(3)(ii) (Opp. 7, n.4). Because one of the joint requestors fell into this news-media category, all the requests are treated as if they came from the media. This order therefore does not address the requestors' contention that the ACLU of Northern California communications department qualifies as a person primarily engaged in publishing or otherwise distributing information to the public.

information on political protests, was a breaking news story. A breaking news story is one that conveys information the public wants quickly. If the story would lose value if it were delayed, it is a breaking news story. Plaintiffs therefore had an "urgency to inform the public," 5 U.S.C. 552(a)(6)(E)(v)(II).

At the time of the request, news organizations were competing with each other to get the latest scoop on the TALON program. Such intense scrutiny validated plaintiffs' argument that Bay Guardian felt a legitimate "urgency to inform" the public about the program. There had been at least fifty-three separate articles on the TALON program in the fifty-two days immediately prior to the FOIA requests. Many of these articles appeared in multiple publications, based in such disparate places as New York City, Wisconsin and Santa Cruz. In the ten days leading up to the requests, there were at least fourteen articles. In the four days preceding the request, there were at least five. On the day of the request, there was an article in *The Washington Post*. It claimed that there were still important, unanswered questions about the program: "Defense officials declined to say how many Talon reports have been placed in the CIFA database . . . or the number of improperly kept reports identified so far . . . . ¶ A Pentagon spokesman said he did not know how many other intelligence agencies picked up questionable Talon reports . . . ." Walter Pincus, *Unverified Reports of Terror Threats Linger*, washingtonpost.com, Jan. 31, 2006.

The public importance of the issue also is demonstrated by the Defense Department's own concession, at the hearing, that it did not comply with regulations requiring it to purge TALON reports about events that did not implicate national security.

The articles in the record also suggest that there was urgency because of the potential impact of news about the TALON program. Some people reportedly were afraid to attend political protests if the military was receiving or collecting reports about such gatherings. As one article stated: "[Two of the protesters] fear that awareness of the existence of what amounts to an informal spy network will chill anti-war activism both locally and on a national scale. ¶ . . . 'We'll have to be more careful who we talk to and how we give out information.'" Steven Elbow, madison.com, Dec. 15, 2005. Getting the requested information quickly might be

10

1  valuable to would-be protesters and opposition groups. It might help them decide how to
2  express their political viewpoints. If the requested information showed that the TALON
3  program was extensive, some people might decide to forego protesting. If the information
4  showed that surveillance was rare, some might decide to participate in protests when otherwise
5  they would have stayed home. Defendants do not dispute that some people might have used the
6  requested information to decide whether to engage in protests.

7  Expedited processing should have been granted under the regulatory framework as well
8  as the statutory one. Plaintiffs demonstrated a "compelling need for the information" by
9  showing that it was a breaking news story of significant importance to public policy and public
10 protests. *See* 32 C.F.R. 286.4(d)(3), (3)(ii), (3)(ii)(A).

11 Defendants argue that there was no "compelling need" or urgency. *First*, they claim
12 there was no urgency to the requests because "a great deal of information was already public" at
13 the time of the requests (Opp. 8). This fact would eliminate urgency only if *all* major news on
14 the TALON program had been reported, *i.e.*, if there were nothing more to say. In fact,
15 valuable, time-sensitive information apparently remained unknown at the time of plaintiffs'
16 request. For instance, no one apparently knew how many improperly retained reports had been
17 forwarded to other databases open to additional intelligence services and to the police. If
18 anything, extensive media interest usually is a fact *supporting* not *negating* urgency in the
19 processing of FOIA request.

20 *Second*, defendants claim that there was no urgency because "the TALON database was
21 not the product of a centralized agency directing the surveillance of anti-war protesters" (Opp.
22 8). This argument is a red herring. Even decentralized surveillance systems can be the subject
23 of breaking news scrutiny. The surge of interest in the TALON program drives home that
24 conclusion. Defendants' argument is more relevant to the merits of the program, rather than to
25 whether to grant expedited processing. As noted above, this action has nothing to do with the
26 merits of the program. It relates only to whether expedited processing was required.

27 *Third*, defendants argue that there was no urgency because "DOD had already taken
28 significant measures to correct the problem" (Opp. 9). It is true that the news media reported

11

1  that the military had taken such steps.  Plaintiffs nevertheless had an urgent need to report the
2  extent to which reports were improperly gathered and the identities of any agencies with whom
3  the reports were shared.  The need to gather information might have been *more* urgent if the
4  Pentagon had not taken the steps it did.  But those steps by themselves could not eliminate the
5  urgency.

6  Plaintiffs' FOIA requests qualify for expedited treatment under the plain language of the
7  applicable statutes and regulations.  There is therefore no need to turn to the legislative history.
8  If the Court did use this history, however, it only would support the conclusions of this order.
9  The breaking-news stories about the TALON program show that it was a matter of "current
10  exigency" and that a delay could "reasonably be foreseen to cause a significant adverse
11  consequence to a recognized interest," *see* 1996 U.S.C.C.A.N. at 3469.  At the hearing,
12  defendants claimed that delay would not cause a "significant adverse consequence to a
13  recognized interest," *ibid.*  In making this argument, defendants recognize only the interests that
14  may be harmed if the TALON program violates the law, such as free speech and privacy.  Even
15  if these interests would not be harmed, another recognized interest would be harmed by delay:
16  the media's interest in quickly disseminating breaking, general-interest news.  *See* 32 C.F.R.
17  286.4(3)(ii) (recognizing the interest).  Defendants also note that the legislative history supports
18  a narrow construction of the compelling need criterion (Opp. 12).  Even a narrow application of
19  the "urgent need" standard, *see* 32 C.F.R. 385.4(d)(3)(ii), supports plaintiffs' entitlement to
20  expedited processing.  Defendants' only argument to the contrary is based on a misconstruction
21  of plaintiffs' request.  Defendants implies that the request alleged only that the public had a
22  right to know the information.  In fact, plaintiffs' request showed not only the public's need to
23  know but also the urgency of the news.[7]

**CONCLUSION**

25  For the reasons stated, plaintiffs' motion for summary judgment is **GRANTED**.
26  Defendants are ordered to provide expedited processing.  Plaintiffs did not support their

---

[7] Defendants claimed that the motion was likely to become moot because processing of plaintiffs' requests were likely to be completed soon.  At the time this order was issued, the requests were still unsatisfied.  The motion therefore did not become moot.

12

requests in the complaint for attorney's fees and costs, and for an order directing defendants to disclose the requested records. Those forms of relief therefore are **DENIED**.

**IT IS SO ORDERED.**

Dated: May 25, 2006

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE